1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEVE SANCHEZ,

11          Plaintiff,                     No. CIV S-07-0542 MCE EFB P

12   vs.

13   PENNER, et al.,                       FINDINGS AND RECOMMENDATIONS

14          Defendants.

15   _____/

16          Plaintiff is a prisoner without counsel suing for alleged civil rights violations.  *See* 42

17   U.S.C. § 1983.  This action proceeds on the July 9, 2007, first amended complaint which alleges

18   that defendants Doctors Penner and Wedell were deliberately indifferent to plaintiff's serious

19   medical needs, i.e., a severe infection in his wrist.  The matter is now before the court on

20   defendant Dr. Wedell's September 11, 2007, motion to dismiss on the ground that plaintiff failed

21   to exhaust the available administrative remedies.  For the reasons explained below, the court

22   finds that plaintiff failed to exhaust the available administrative remedies.

23   **I.     Facts**

24          In the first amended complaint, plaintiff alleges the following:  On January 23, 2006, he

25   went to the prison's emergency medical clinic for painful swelling and discoloration in his right

26   hand and wrist.  Am. Compl., at 10.  Defendant Dr. Wedell examined him, ordered x-rays and

1

prescribed Tylenol for pain. *Id.*, at 10-11. When plaintiff explained that he had been taking very high doses of Motrin, but the pain remained severe, Wedell told plaintiff to return to the clinic later that day to see Dr. Penner. *Id.* Plaintiff returned later that day, and Dr. Penner examined plaintiff's hand and wrist and heard plaintiff's report of pain. *Id.*, at 11. Dr. Penner diagnosed plaintiff as suffering from a reaction to a bug bite, and prescribed the antibiotic Keflex to cure the infection. *Id.*, at 12.

On January 25, 2006, plaintiff complained to Dr. Wedell that he had not received his antibiotics. *Id.*, at 14. Dr. Wedell promised to call the pharmacy to check on the status of the prescription and he offered plaintiff aspirin for pain. *Id.*, at 14-15. Plaintiff received the antibiotics on the morning of January 26, 2006. *Id.*, at 15. Also on January 26, 2006, a medical technical assistant examined plaintiff and diagnosed him with "cellulitis." *Id.*, at 16. Plaintiff reported this diagnosis to Dr. Penner, who directed plaintiff to continue taking the antibiotics and gave plaintiff Tylenol to take at night for pain. *Id.* The swelling and pain continued. *Id.*, at 17. Thus, on January 27, 2007, plaintiff returned to the clinic, where a specialist examined him, diagnosed him with cellulitis, prescribed Vicodin for pain, ordered an injection of antibiotics, discontinued the Keflex, ordered a course of a different antibiotic, and had plaintiff taken to an outside hospital. *Id.*, at 23-24.

Plaintiff alleges that the delay in proper treatment resulted in long-term damage to the ligaments, soft tissue and nerves in his right hand and wrist. Based on these allegations, plaintiff claims that defendants Penner and Wedell were deliberately indifferent to his medical needs.

On February 14, 2006, plaintiff filed an administrative appeal, designated Sac H-06-0527. He asserted in the appeal that on January 23, 2006, he went to the medical clinic for diagnosis and treatment of the pain and swelling in his right hand and wrist, and that Dr. Penner failed to treat him for pain or for the infection. He asserted that it was three days later when a specialist prescribed the proper antibiotic and an effective painkiller. Defs.' Mot. to Dism., Ex. B, Decl. of Leahy ("Leahy Decl."). Plaintiff sought monetary damages. *Id.*

1   The informal and the first formal levels of review were bypassed.  *Id.*  Defendant Penner

2   reviewed the matter on the first formal level of review.  *Id.*  Plaintiff had since been transferred

3   to Mule Creek ("MCSP"), preventing Penner from reviewing plaintiff's medical records.  *Id.*  On

4   March 28, 2006, Penner denied the request for monetary damages, but partially granted the

5   appeal in that he contacted staff at MCSP and requested that plaintiff be examined for ongoing

6   pain and swelling of his right wrist.  *Id.*  Plaintiff appealed to the second formal level of review

7   on April 21, 2006.  *Id.*  On June 5, 2006, he completed an appeal form complaining that he had

8   not received a timely response on the second level of review for Log. No. Sac H 06-00527.  Pl.'s

9   Opp'n, at A 18.  A notation on the bottom of the form states that he copied and mailed it from

10  MCSP on June 6, 2006.  *Id.*  A date stamp shows that the Inmate Appeals Branch ("IAB")

11  received it on July 14, 2006.  *Id.*  On June 19, 2006, the appeals coordinator from CSP-Sac

12  completed a form stating that plaintiff had not submitted the proper documents necessary to

13  inquire about his appeal.  Pl.'s Opp'n, at A 19.  Instead of a new appeal form, he should have

14  submitted a form used to request an interview.  *Id.*  The appeals coordinator explained that the

15  second level response should have been completed on June 12, 2006, and it was overdue, and he

16  promised to send it to plaintiff as soon as it was completed.  *Id.*  In fact, the decision on the

17  second level of review is reflected in a June 12, 2006, memo partially granting the appeal.  Pl.'s

18  Opp'n, at A 2   However, it was not returned to plaintiff until June 21, 2006.  *Id.*   The decision

19  concluded by informing plaintiff that he could appeal the matter to the Director's Level of

20  Review.  *Id.*  There is no evidence that plaintiff ever did so.

21          Defendants submit the declaration of N. Grannis, Chief of the IAB, who is familiar with

22  the administrative appeals process and its system of maintaining records.  Defs.' Mot. to Dism.,.

23  Ex. A, Decl. of Grannis ("Grannis Decl."), at ¶¶ 1-5.  Grannis states that she reviewed IAB

24  records and found that "no appeal filed by inmate Steven Sanchez, CDCR Number K-14392, at

25  the Director's (Third) Level that was accepted for review relating to his claims" against the

26  defendants in this action.  *Id.*, at ¶ 5.

1    Plaintiff has submitted documents suggesting that he sought review on the Director's

2  Level of Review, but the portion of the form where the prisoner must write the "date submitted,"

3  is blacked out so that the date cannot be read.  Pl.'s Opp'n, Ex. A at 2, 8.  Plaintiff also submits a

4  September 9, 2006, letter to him from the IAB rejecting his appeal in Sac 06-0527 on the ground

5  that the appeal was late.  *Id.*, Ex. A at 13.  On September 22, 2006, plaintiff wrote to N. Grannis

6  at the IAB.  *Id.*, at A 3.  He explained that his appeal concerned an incident at Folsom State

7  Prison, but he had been transferred to MCSP.  *Id.*  He asserted that the delays in inter-

8  institutional mail made it impossible for him to comply with the timeliness rules for grievances.

9  *Id.*  He also asserted that he received a response on the second level on July 8, 2006, and mailed

10 his appeal to the Director's Level of Review on July 18, 2006.  *Id.*

11    In addition to the delays in inter-institutional mail, plaintiff also attributed his delay to

12 prison officials' late response to his appeal on the second level of review.  *Id.*  In a letter dated

13 October 10, 2006, N. Grannis explained to plaintiff that his letter was not an acceptable appeal.

14 *Id.*, at A 14.  The letter informed plaintiff that he must submit grievances to the appeals

15 coordinator and he must use the original form instead of a photocopy.  *Id.*  Plaintiff has

16 submitted letters from IAB representatives dated November 21, 2006, December 23, 2006, and

17 February 20, 2007, showing that he submitted documents to the IAB, but they were returned to

18 him because he had not submitted the original appeal form.  Pl.'s Opp'n, at A-15 to A-17.

19 **II.    Standards Applicable to This Motion**

20    Defendants move to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure.

21 While the Ninth Circuit has stated that  Rule 12(b) is the proper mechanism for resolving

22 questions arising under 42 U.S.C.§ 1997e(a), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003),

23 the reason underlying that decision has been undermined.  The Ninth Circuit found that failure to

24 exhaust was a matter in abatement which should be raised in a motion made under

25 ////

26 ////

4

1   "unenumerated Rule 12(b)."[1]  *Wyatt*, 315 F.3d at 1119.  However, the United States Supreme

2   Court recently clarified that failure to exhaust is an affirmative defense which defendant has the

3   burden of pleading and proving.  *Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910, 921 (2007).  Federal

4   courts appropriately consider affirmative defenses on summary judgment.  Here, defendant's

5   motion necessarily requires the court to consider the affidavits and exhibits presented for the

6   purpose of proving the absence of exhaustion.  Accordingly, the court finds that a motion for

7   summary judgment is the proper mechanism for resolving the question of whether plaintiff

8   satisfied the exhaustion requirement.

9   **III.    Rule 56 Standards**

10          Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases

11   with no disputed material facts.  *See Northwest Motorcycle Ass'n v. United States Dep't of*

12   *Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  At issue is "whether the evidence presents a

13   sufficient disagreement to require submission to a jury or whether it is so one-sided that one

14   party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

15   (1986).

16          Rule 56 serves to screen the latter cases from those which actually require resolution of

17   genuine disputes over facts material to the outcome of the case; e.g., issues that can only be

18   determined through presentation of testimony and evidence at trial such as credibility

19   determinations of conflicting testimony over dispositive facts.

20              In three recent cases, the Supreme Court, by clarifying what the
           non-moving party must do to withstand a motion for summary
21          judgment, has increased the utility of summary judgment. First, the
           Court has made clear that if the non-moving party will bear the
22          burden of proof at trial as to an element essential to its case, and

23   _____

24          [1]  *Wyatt* is clear that regardless of nomenclature, a motion attacking failure to exhaust is
     not a challenge to the sufficiency of the complaint.  It is a motion in which defendant must raise
25   and prove by evidence the absence of exhaustion.  *Id.*  In this regard, the Ninth Circuit in *Wyatt*
     provides further guidance.  It recognizes that when the district court looks beyond the pleadings
26   to a factual record in deciding the exhaustion motion it necessarily does so under "a procedure
     closely analogous to summary judgment."  *Id.*, n.14

1        that party fails to make a showing sufficient to establish a genuine
     dispute of fact with respect to the existence of that element, then
2        summary judgment is appropriate.  *See Celotex Corp. v. Catrett*,
     477 U.S. 317 (1986).  Second, to withstand a motion for summary
3        judgment, the non-moving party must show that there are "genuine
     factual issues that properly can be resolved only by a finder of fact
4        because they may reasonably be resolved in favor of either party."
     *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis
5        added).  Finally, if the factual context makes the non-moving
     party's claim implausible, that party must come forward with more
6        persuasive evidence than would otherwise be necessary to show
     that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v.*
7        *Zenith Radio Corp.*, 475 U.S. 574 (1986).  No longer can it be
     argued that *any disagreement* about a material issue of fact
8        precludes the use of summary judgment.

9   *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert.*

10   *denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added).  In short, there is no

11   "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to

12   establish the existence of an element essential to that party's case, and on which that party will

13   bear the burden of proof at trial."  *Grimes v. City and Country of San Francisco*, 951 F.2d 236,

14   239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

15        Thus, to overcome summary judgement an opposing party must show a dispute that is

16   both genuine, and involving a fact that makes a difference in the outcome.[2]  Two steps are

17   necessary.  First, according to the substantive law, the court must determine what facts are

18   material.  Second, in light of the appropriate standard of proof, the court must determine whether

19   material factual disputes require resolution at trial.  *Id.,* at 248.

20        When the opposing party has the burden of proof on a dispositive issue at trial, the

21   moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v.*

22   *National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  The moving party need only point to matters

23

24       [2]  On June 8, 2007, the court expressly informed plaintiff of the requirements for
opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v.*
25   *Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  *cert. denied*, 527 U.S. 1035 (1999), and
*Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).  Pursuant to *Wyatt*, 315 F.3d at
26   1120, n.4, that order also expressly informed plaintiff of the requirements for opposing a failure
to exhaust motion that is supported by affidavits or declarations and exhibits.

1  which demonstrate the absence of a genuine material factual issue.  *See Celotex v. Cattret*, 477

2  U.S. 317, 323-24 (1986).

3          If the moving party meets its burden, the burden shifts to the opposing party to establish

4  genuine material factual issues.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  The opposing

5  party must demonstrate that the disputed facts are material, i.e., facts that might affect the

6  outcome of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv.,*

7  *Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are

8  genuine, i.e., the parties' differing versions of the truth require resolution at trial, *see T.W. Elec.*,

9  809 F.2d at 631.  There can be no genuine issue as to any material fact where there is a complete

10  failure of proof as to an essential element of the nonmoving party's case because all other facts

11  are thereby rendered immaterial.  *Celotex*, 477 U.S. at 323.  The opposing party may not rest

12  upon the pleadings' mere allegations or denials, but must present evidence of specific disputed

13  facts.  *See Anderson*, 477 U.S. at 248.[3]  Conclusory statements cannot defeat a properly

14  supported summary judgment motion.  *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir.

15  1983).

16          The court does not determine witness credibility.  It believes the opposing party's

17  evidence, and draws inferences most favorably for the opposing party.  *See Anderson*, 477 U.S.

18  at 249, 255.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce

19  evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v.*

20  *American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*,

21  477 U.S. at 322).

22          If reasonable minds could differ on material facts at issue, summary judgment is

23  inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other

24

25          [3] A verified complaint may be used as an affidavit in opposition to the motion.
    *Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196,
26  197-98 (9th Cir. 1987) (per curiam).

1   hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the

2   nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation

3   omitted).  In that case, the court must grant summary judgment.

4   **IV.    Failure to Exhaust**

5          The applicable statute is 42 U.S.C. § 1997e(a), which provides in relevant part:

6          No action shall be brought with respect to prison conditions under section 1983 of
           this title, or any other federal law, by a prisoner confined in any jail, prison or
7          other correctional facility until such administrative remedies as are available are
           exhausted.

8

9   This requirement is mandatory and unequivocal.  *Booth v. Churner*, 532 U.S. 731, 741 (2001);

10  *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute

11  making exhaustion a precondition to judgment, but it did not.  The actual statue makes

12  exhaustion a precondition to *suit*." (citation omitted)).  A prisoner seeking leave to proceed *in*

13  *forma pauperis* in an action challenging the conditions of his confinement brings an action for

14  purposes of 42 U.S.C. § 1997e when he submits his complaint to the court.  *Vaden v.*

15  *Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006).  Therefore, a prisoner must exhaust available

16  administrative remedies before filing any papers in federal court and is not entitled to a stay of

17  judicial proceedings in order to exhaust.  *Id.* at 1051;  *McKinney v. Carey*, 311 F.3d 1198 (9th

18  Cir. 2002).  Defendant has the burden of proving that plaintiff did not exhaust.  *Brown v. Valoff*,

19  422 F.3d 926, 936 (9th Cir. 2005); *Wyatt*, 315 F.3d at 1119.

20         California prisoners may appeal "any departmental decision, action, condition, or policy

21  which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit.

22  15, § 3084.1(a).  To avail themselves of administrative remedies, prisoners must file a grievance

23  within 15 working days of the event or decision to be grieved.  *Id.*, at § 3084.6(c).  The

24  regulations require the use of specific forms but contain no guidelines for grievance content.  *Id.*,

25  at §§ 3084.2, 3085.  Prisoners ordinarily must present their allegations on one informal and three

26  formal levels of review, although the informal and the first formal levels may be bypassed.  *Id.*,

1   at § 3084.5.  A division head reviews appeals on the first formal level, *see Id.*, at § 3084.5(b)(3)

2   (authorizing bypass of the first formal level when the division head cannot resolve it), and the

3   warden or a designee thereof reviews appeals on the second formal level.  *See Id.*, at

4   § 3084.5(e)(1).  Generally, completion of the third level, the Director's Level of Review,

5   exhausts the remedy.  *Id.*, at § 3084.1(a).

6   **V.   Analysis**

7           Dr. Wedell seeks dismissal for plaintiff's failure to exhaust the available administrative

8   remedies.  He makes two arguments.  First, plaintiff failed to submit a timely appeal to the

9   Director's Level of Review.  Second, the appeal does not mention Dr. Wedell.  As discussed

10  below, although plaintiff has shown a genuine dispute as to the first question, he fails as to the

11  second and cannot show that he exhausted.

12          The first question raised is whether there is adequate evidence to establish a genuine

13  dispute that plaintiff submitted a timely appeal to the Director's Level of Review.  It is important

14  to bear in mind that defendant has the burden of presenting evidence that plaintiff did not

15  exhaust.  Defendant submits evidence demonstrating that plaintiff's administrative appeal was

16  not accepted for review on the Director's Level of Review.  The evidence shows that plaintiff's

17  appeal to this level was late.  Given the California Department of Corrections and

18  Rehabilitation's 15-day limit on submitting grievances, this frequently is the end of the matter

19  for California prisoners.  However, 42 U.S.C. § 1997e(a) requires only that prisoners exhaust the

20  available administrative remedies.

21          Plaintiff has submitted evidence that the only reason his appeal was late was his transfer

22  from CSP-Sac to MCSP which made it impossible for him to satisfy the 15-day time limit on

23  appeals.  Defendant Wedell does not contest this evidence.  Thus, plaintiff has satisfied his

24  burden of presenting evidence sufficient to establish a genuine dispute whether the

25  administrative remedy was actually available to him.

26  ////

1      Defendant's next argument is another matter.  There is no genuine dispute that plaintiff

2  failed to present in the administrative appeal process his claim as to Dr. Wedell.

3      Defendant asserts that the failure to identify him by name defeats any assertion that

4  plaintiff alerted prison officials to the fact that the treatment he provided was part of the

5  "problem" described in the appeal.  While the deficiency in plaintiff's grievance is the level of

6  detail provided in the grievance, plaintiff's failure to identify Dr. Wedell is not, itself,

7  dispositive.  The Ninth Circuit has held that as long as a California prisoner properly completes

8  the grievance form provided by prison officials, and that form does not require the prisoner to

9  provide names, then the prisoner has complied with the exhaustion requirement.  *Butler v.*

10  *Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005).  The exhaustion requirement is designed to "filter

11  out the bad claims and facilitate consideration of the good," by "allow[ing] prison officials an

12  opportunity to resolve disputes concerning the exercise of their responsibilities before being

13  haled into court." *Jones*, 127 S. Ct. at  914.  The requirement is mandatory, but prisoners need

14  only follow whatever established procedure actually exists.  *See Woodford*, 126 S.Ct. at 2391-

15  2393; *see also Booth*, 532 U.S. at 741 fn. 6.  Thus, consistent with *Butler*, the Supreme Court has

16  refused to read into 42 U.S.C. § 1997e any particular formula.  It has rejected the argument that a

17  plaintiff must identify in a grievance every officer he might sue in federal court, finding that such

18  a "procedural rule lacks a textual basis in the PLRA." *Jones*, 127 S.Ct. at 910, 922.  The Court

19  reiterated that a prisoner properly exhausts when he follows the prison's rules governing the

20  administrative appeals process, and concluded that "exhaustion is not *per se* inadequate simply

21  because an individual later sued was not named in the grievances." *Id.*  The failure of the

22  administrative grievance to specify Dr. Wedell by name does not equate with a failure to

23  exhaust.

24      The proper analysis is whether the allegations presented administratively fairly allowed

25  prison officials an opportunity to resolve the dispute before being dragged into court.  Thus, it is

26  of particular significance here that California's prison grievance procedure requires that a

1   prisoner "describe the problem and the action requested."  Cal. Code Regs. tit. 15, § 30842.2(a).

2   Plaintiff's initial grievance asserts that plaintiff went to the medical clinic on January 23, 2006,

3   for pain and swelling in his right wrist and that Dr. Penner misdiagnosed him and failed to

4   provide adequate treatment.  That claim asserted a single visit to the clinic that day in which,

5   allegedly, the doctor who examined him mistakenly diagnosed his condition.  In the compliant

6   before this court, plaintiff alleges that he went to the clinic in the morning, when he saw Dr.

7   Wedell, and then went to the clinic again later in the day, when he saw Dr. Penner.  There is no

8   suggestion in the grievance that plaintiff went to the clinic before his visit to Dr. Penner.  The

9   implication in the grievance is that he was dissatisfied with the treatment he received during

10  what turns out to be his second visit to the clinic that day, and with the subsequent delay in

11  receiving adequate medical care.[4]  Nothing in the record suggests that during the appeals process

12  plaintiff told prison officials that when he saw Dr. Penner, it was his second visit to the clinic, or

13  that he was dissatisfied with his treatment at the first visit.  Thus, prison officials had no notice

14  that plaintiff's problem in any way involved two visits to the medical clinic on January 23, 2006,

15  or any issue other than the diagnosis and treatment received on the one visit he specified.  This

16  did not fairly present the prison officials an opportunity to resolve the dispute as to what

17  diagnosis and treatment occurred at the first visit to the clinic that day and plaintiff failed to

18  exhaust as to that claim.

19  **VI.    Conclusion**

20      For the reasons explained, the court finds that there is no genuine issue about whether

21  plaintiff exhausted the available administrative remedies with respect to his claims against Dr.

22   Wedell, and he is entitled to judgment as a matter of law.

23  ////

24

25      [4]  At the time plaintiff was interviewed on the first formal level of review, he had been
    transferred from CSP-Sac to MCSP.  Thus, plaintiff's medical records were not available for
26  review.

1    Accordingly, it hereby is RECOMMENDED that:

2    1.  Defendant Dr. Wedell's September 11, 2007, motion for summary judgment be

3    granted;

4    2.  Judgment be entered in his favor; and

5    3.  Defendant Dr. Penner be given 30 days to file and serve an answer to the first

6    amended complaint.

7    These findings and recommendations are submitted to the United States District Judge

8    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

9    after being served with these findings and recommendations, any party may file written

10   objections with the court and serve a copy on all parties.  Such a document should be captioned

11   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

12   within the specified time may waive the right to appeal the District Court's order. *Turner v.*

13   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

14   Dated:  February 25, 2008.

15

16                                    EDMUND F. BRENNAN
                                      UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26